Argued and submitted May 4, decision of the Court of Appeals reversed; judgment of the circuit court affirmed June 17, 1993

In the Matter of
Jonathan G. Smith, a Child.

## STATE ex rel JUVENILE DEPARTMENT OF LANE COUNTY,
*Petitioner on Review,*

*v.*

## Darold A. SMITH,
*Respondent on Review.*

## (CC 90-475; CA A68527; SC S39706)

853 P2d 282

Katherine H. Waldo, Assistant Attorney General, Salem, argued the cause for petitioner on review. With her on the petition were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Daniel N. Gordon, Eugene, argued the cause and filed a response for respondent on review.

GRABER, J.

## GRABER, J.

ORS chapter 419 governs juvenile court proceedings. ORS 419.476(1) provides in part:

"The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"* * * * *

"(c) Whose behavior, condition or circumstances are such as to endanger the welfare of the person or the welfare of others[.]"

In this case, we consider two issues: (1) What is required to establish juvenile court jurisdiction under ORS 419.476(1)(c) of a child whose condition or circumstances are such as to endanger the child's welfare, and (2) was it proper for the juvenile court, under that provision, to take jurisdiction of a six-year-old boy (the child) whose father subjected the child's mother's 12-year-old sister (the aunt) to sexual conduct?

On *de novo* review of the juvenile court's determination that it had jurisdiction, the Court of Appeals reversed, on the ground that a single incident of sexual conduct by father toward the child's aunt was not evidence from which a reasonable inference could be drawn that the child's welfare was endangered. *State ex rel Juv. Dept. v. Smith*, 114 Or App 594, 836 P2d 173 (1992). We review *de novo*[1] and reverse the decision of the Court of Appeals.

Father and mother dissolved their marriage in 1989. The judgment granted them joint custody of the child; father was granted primary physical custody. Father and mother began living together again in 1990, along with the child and mother's nine-year-old son by a different father.

At about 10:30 p.m. on October 13, 1990, the child's 12-year-old aunt arrived at the home of father and mother, planning to spend the night there. After the aunt arrived, she, father, and mother watched television in the living room of the house. The child and his half brother were asleep in their

---

[1] ORS 19.125(4) provides that, when the Court of Appeals has "tried a cause anew upon the record," this court "may limit its review of the decision of the Court of Appeals to questions of law." In this case, however, we exercise our discretion to review the case *de novo*.

bedrooms. After father and mother retired to their bedroom, the aunt continued to watch television. Around midnight, father entered the living room, conversed briefly with the aunt, went into the bathroom, returned to the living room, stood near the aunt for a few moments, and then returned to his bedroom. He was nude. The aunt turned off the television and lay down on the couch in the living room. Father, who was thirsty from having smoked marijuana, came out of his bedroom a second time, walked through the living room, got a drink of water from the kitchen, and returned to his bedroom. He was still nude.

The aunt eventually went to sleep. Sometime later, she was awakened by father, who was "rubbing" her hair. He was "squatting" by the couch, still unclothed. The aunt told father to "give me a hug and go to bed." Father hugged her and "started kissing me down my neck. And then he put his hand on my breast and started rubbing." The aunt asked him to stop. Father returned to his bedroom. The aunt telephoned her mother, who picked her up and took her home.

One month later, a Children's Services Division worker filed a petition for juvenile court jurisdiction of the six-year-old child, on the ground that father's sexual conduct toward the child's 12-year-old aunt constituted "conditions and circumstances" of the child that endangered his welfare and that, because father and mother shared custody of the child, mother was unable adequately to protect the child from that risk of harm. The juvenile court determined that it had jurisdiction and made a disposition in the case.[2]

Father argues that, in order to take jurisdiction of a child, a juvenile court must find facts that give rise to a "reasonable prediction" that, unless the court assumes jurisdiction, "harm will come to the child." Father argues that the evidence of his conduct toward the child's aunt, by itself, was insufficient to demonstrate either a direct or an indirect risk of harm to the child and that no other facts in the record, taken together with that incident, supported the required prediction of harm. Father concludes that the state failed to

---

[2] The juvenile court granted custody of the child to Children's Services Division and required father to undergo sex offender treatment. That disposition is not at issue in this proceeding.

meet its burden of proof[3] that the child's conditions or circumstances were such as to endanger his welfare.

In response, the state contends that, in order to assume jurisdiction under ORS 419.476(1)(c), the juvenile court need not find a direct risk of harm to a child by a person, but may find that there is a risk of harm to the child from remaining in a "harmful environment" without juvenile court intervention or supervision. Relying in part on statutory provisions establishing prerequisites to the termination of parental rights regarding a child,[4] the state argues that sexual conduct by a person toward another child in a child's home demonstrates a risk of a harmful environment to the latter child sufficient to support juvenile court jurisdiction of that child.

This court has not previously considered what "condition[s] or circumstances are such as to endanger the welfare" of a child over whom juvenile court jurisdiction is sought. ORS 419.176(1)(c). In answering that question, we begin with the text and context of the statute. *See State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 174-75, 818 P2d 1270 (1991) (in construing a statute, this court begins by considering its text and context). The text and context of ORS 419.176(1)(c) suggest that there is a broad general standard for the establishment of juvenile court jurisdiction. *See State v. McMaster*, 259 Or 291, 297, 486 P2d 567 (1971) (legislature generally

---

[3] ORS 419.500(1) provides in part:

"The facts alleged in the petition showing the child to be within the jurisdiction of the court as provided in ORS 419.476(1), unless admitted, must be established by a preponderance of competent evidence."

[4] ORS 419.523 provides in part:

"(1) The parental rights of the parents of a child within the jurisdiction of the juvenile court as provided in ORS 419.476(1) may be terminated * * * if it is in the best interest of the child. * * *

"* * * * *

"(3) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change. In determining such conduct or conditions, the court shall consider but is not limited to the following:

"* * * * *

"(b) Conduct toward any child of an abusive, cruel, or sexual nature."

intended to grant flexibility to juvenile court in administration of juvenile code).

If the text and context left any doubt, legislative history would resolve it. *See State ex rel Juv. Dept. v. Ashley, supra,* 312 Or at 175 (where intent of legislature is not clear from text and context of statute, court examines legislative history). ORS 419.476(1)(c) originally was enacted in 1959, as part of a major revision of the entire juvenile code. Or Laws 1959, ch 432. The bill, HB 153, was largely the result of work done by the 1957-59 Interim Committee on Judicial Administration (Subcommittee on Juvenile Law). Letter to Multnomah County Delegation to the Legislative Assembly from Multnomah County Circuit Judge Virgil H. Langtry, April 10, 1959, filed as Exhibit, 1959 House Committee on the Judiciary.

The Interim Committee first proposed that the jurisdictional provision refer to the "conduct or condition" of a child. In a letter to the Interim Committee, Philip Joss, a member of the Juvenile Law Committee of the Oregon State Bar, wrote that the words "conduct or condition" in the proposed draft are *"too precise"* and that they fail to cover "for example, * * * a situation where a child is threatened with bodily harm from his parent." Exhibit, 1957-59 Interim Committee on Judicial Administration (emphasis added).

The Interim Committee's final proposed draft of the jurisdictional statute referred to the "behavior or condition" of a child. That general wording replaced a list of specific jurisdictional standards enumerated in the former law. See *former* ORS 419.502 and 419.503 (1957), defining a "delinquent child," subject to juvenile court jurisdiction, as a person under the age of 18 who, for example, is a "persistent truant from school" or is found in a "house of ill fame," "saloon," or "gaming house." In its final report, the Interim Committee explained:

> "Subsection (3) allows the juvenile court to act in the case of a child 'whose behavior or condition' is endangering his own welfare or that of others. 'Behavior' includes actions of the child, while 'condition' includes acts (or failures to act) by others which affect the child. This language adequately covers [the former juvenile] law's reference to association with criminals and presences in places of ill-repute, *but at the*

*same time does not limit the jurisdiction of the court to the specific instances set out in [the former law].*" Report of the Legislative Interim Committee on Judicial Administration, Part II, Juvenile Law, January 1, 1959, p 13 (emphasis added).

As enacted, ORS 419.476(1)(c) (1959) provided:

"The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"* * * * *

"(c)   Whose behavior or condition is such as to endanger his own welfare or the welfare of others." Or Laws 1959, ch 432, § 2.

In 1963, ORS 419.476(1)(c) was amended to essentially its present form by the addition of the word "circumstances."[5] Or Laws 1963, ch 496, § 1. In a written statement to the Senate Judiciary Committee, Philip Joss explained that the amendment "ensures that there is jurisdiction, if a child's circumstances endanger the welfare of the child or others." Exhibit, 1963 Senate Committee on the Judiciary (emphasis deleted).

■      In summary, it is apparent that the intent of the legislature in enacting ORS 419.476(1)(c) was to allow the juvenile court to assume jurisdiction both in cases in which a child is harmful to himself or herself or to others and in cases in which a child is threatened with harm by another. In addition, the legislature had in mind situations in which harm to others within a child's environment may be a circumstance that endangers the welfare of a child over whom jurisdiction is sought. The legislative history further suggests that a general standard, involving the exercise of discretion by the juvenile court, would replace a legislative list of conditions or circumstances, the existence of which automatically would confer jurisdiction on a juvenile court.

We therefore reject the proposition that any specific condition or circumstance *per se* does, or does not, establish the juvenile court's jurisdiction. We read ORS 419.476(1)(c) to require the juvenile court to consider the totality of the

---

[5] The provision was amended in 1983 by the substitution of gender-neutral language. Or Laws 1983, ch 338, § 926.

circumstances presented in the case before it. If, after considering all the facts, the juvenile court finds that there is a reasonable likelihood of harm to the welfare of the child, the court may take jurisdiction. In some cases, a single condition or circumstance may suffice to show a reasonable likelihood of harm. A condition or circumstance need not involve the child directly, but may be found harmful by reason of creating a harmful environment for the child. *See State ex rel Juv. Dept. v. Rhoades*, 73 Or App 192, 698 P2d 66, *rev den* 299 Or 443 (1985) (juvenile court properly assumed jurisdiction of 18-month-old girl where, although the court found no evidence of sexual conduct by the father toward the child, it found that the father had been convicted of sexually abusing the child's older half-sister, that the mother was irregular in her attendance at a parent-training program, and that the mother expressed willingness to cede custody of the child to the father in the event that her relationship with the father terminated; Court of Appeals concluded that "intervention [is] appropriate if there is a reasonable prediction that harm will come to the child" and that the juvenile court may intervene to protect a child "in the absence of actual damage to the child"); *State ex rel Juv. Dept. v. Gates*, 96 Or App 365, 774 P2d 484, *rev den* 308 Or 315 (1989) (evidence showing that the father had sexually abused his two older children, that the mother refused to acknowledge the father's abuse, and that the parents had violated court orders in regard to those children was sufficient to show that the conditions or circumstances surrounding two younger children endangered those children's welfare within the meaning of ORS 419.476(1)(c)).

■ Applying that standard here, we agree with the juvenile court that the conditions or circumstances of the six-year-old child were such as to endanger his welfare. Father subjected another child in the child's home to sexual conduct, and he refused to acknowledge having done so. Father smoked marijuana in the home while the child was at home. Father also "mentally abused" and "verbally abused" the child. On *de novo* review, we affirm the juvenile court's decision to take jurisdiction of the child under ORS 419.476(1)(c).

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.