Argued and submitted April 4, reversed July 5, respondent's petition for reconsideration filed July 19 allowed by opinion October 3, 2012
See 252 Or App 626, 290 P3d 19 (2012)

In the Matter of L. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. G.,
*Appellant.*

Multnomah County Circuit Court
2011804162;
Petition Number 108479M;
A149648

281 P3d 681

Megan L. Jacquot argued the cause and filed the brief for appellant.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

Mother appeals a judgment of the juvenile court finding her infant child, L, to be within the jurisdiction of the court based on conditions and circumstances that endangered her welfare. For the reasons that follow, we reverse.

In this case, the juvenile court established jurisdiction over L and made L a ward of the court based on an August 2011 amended petition alleging that the "condition or circumstances are such as to endanger the welfare of the person or of others," ORS 419B.100(1)(c). In support of its determination of jurisdiction, the juvenile court found that mother has been subjected to domestic violence by L's father, which presents a threat of harm to L, who was five months old when the petition was filed. The court further found that mother had failed to recognize that father poses a risk to L and to L's older sibling J, who was 20 months old when the petition was filed.[1] The court found that mother's lack of recognition had resulted in injury to J, and that mother cannot protect L from father. The court found that mother had failed to obtain regular and adequate medical care for J. The court took jurisdiction of L, ordered mother, who was 19 years old at the time of the August 2011 hearing, to continue her participation in a program called "Teen Insight," and ordered her to participate in domestic violence counseling. The court directed mother to keep all medical appointments for L.

As indicated by the bases on which the juvenile court took jurisdiction, much of the evidence in the record relates to the older sibling J, who was born on August 14, 2009. J was premature and was in a neonatal unit for two weeks after his birth. After age four months, mother neglected J's medical care for 10 months, and missed three well-child check-ups and immunizations. J suffers from weak bones, likely caused by a nutritional deficiency; the evidence shows that J's condition could have been diagnosed or prevented if mother had taken him to his checkups.

L was born on November 12, 2010. The record includes evidence that L's father, who is not J's father, is

---

[1] Father is not a party to this appeal concerning jurisdiction over L. Also, neither J, the older sibling, nor his father, N, are parties to this appeal.

extremely controlling, yelled at mother and, during her pregnancy with L, banged and punched the walls with his fists in J's presence. Father also referred to J by racially derogatory names.

The family first came to the state's attention in April 2011, when mother brought J to the emergency room with an injured leg, which the doctors diagnosed as a nondisplaced fracture of the femur. J, who was age 20 months at the time, remained in the hospital for three days. Father ultimately admitted to having caused J's injury out of frustration with J's crying. Father also admitted to hitting, slapping, pinching, squeezing, and punching J. After J's discharge, mother missed several follow-up appointments.

On appeal, mother contends, essentially, that the conditions and circumstances that gave rise to the filing of the original jurisdictional petition in April 2011 no longer existed at the time of the hearing in August 2011, and that there are no current conditions or circumstances that support the court's jurisdiction.

We have the discretion to review this type of case *de novo*. ORS 19.415(3)(b). However, the parties have not requested *de novo* review, and we decline to conduct such a review. *See* ORAP 5.40(8)(c) (we exercise *de novo* review "only in exceptional cases"). Therefore, "our task is to review the facts found by the juvenile court to determine whether they are supported by any evidence, and then to determine whether, as a matter of law, those facts together with facts implicitly found by the juvenile court, provide a basis for juvenile court jurisdiction under ORS 419B.100(1)(c)." *Dept. of Human Services v. C. Z.*, 236 Or App 436, 442, 236 P3d 791 (2010).

The juvenile court has "exclusive original jurisdiction" in a case involving a child "[w]hose condition or circumstances are such as to endanger the welfare of the person or of others," ORS 419B.100(1)(c). To assume dependency jurisdiction, the juvenile court must find by a preponderance of the evidence that the child's conditions or circumstances currently endanger her welfare, either by presenting a risk of harm or as a result of harm that has

already occurred. *State v. S. T. S.*, 236 Or App 646, 238 P3d 53 (2010). A child's condition or circumstances warrant the protection of the juvenile court when, "under the totality of the circumstances, there is a reasonable likelihood of harm to the welfare of the child." *State ex rel Juv. Dept. v. Vanbuskirk*, 202 Or App 401, 405, 122 P3d 116 (2005) (citing *State ex rel Juv. Dept. v. Smith*, 316 Or 646, 652-53, 853 P2d 282 (1993)). The focus of the inquiry is on the child's protection or circumstances. *Id*. In deciding if the juvenile court has jurisdiction, the court must determine if the child needs the court's protection, not the nature or extent of the necessary protection. *State ex rel Juv. Dept. v. Brammer*, 133 Or App 544, 549 n 5, 892 P2d 720, *rev den*, 321 Or 268 (1995). However, when determining whether the court has jurisdiction because of conditions and circumstances, the focus must be on the child's current conditions and circumstances and not on some point in the past. *State ex rel Juv. Dept. v. S. A.*, 230 Or App 346, 347, 214 P3d 851 (2009).

On appeal, mother contends that the evidence is not sufficient to support the trial court's finding that there *currently* are conditions and circumstances that endanger L. In particular, mother contends that the juvenile court's findings do not take into account the current circumstances, including the facts that mother has moved out of father's home, that she has not had contact with father since he confessed to injuring J, that she does not want to have contact with father, that she is doing a good job of parenting L and J with supervision, and that the children are doing well. Mother has a full-time job, and the children are in an approved day care. Mother continues to participate in "Teen Insight," which provides parenting classes and a strong mothers' support group. Mother is complying with DHS's requirements that she be supervised with the children and that she not have any contact with father. Mother testified that she would not leave L with father unsupervised, but that she does not believe that father poses a risk of harm to L, because she did not believe that he would harm his own child.[2] Mother believes that father needs classes and an evaluation before he can be around L.

---

[2] This is in contrast to J because he has a different father.

The state acknowledged that the circumstances that gave rise to the petition for jurisdiction have changed and that mother is not likely to have any further contact with father, but the state contends nonetheless that mother's failure to recognize that she experienced abuse by father makes it possible that a similar situation could occur in the future with another individual. However, there is no evidence in this record that mother is *currently* in a relationship with an individual who might pose a risk to L or that she has repeatedly entered into relationships with such individuals.

We agree with mother that the bases for jurisdiction alleged in the petition and on which the juvenile court determined that it had jurisdiction over L no longer exist. In particular, there is no evidence that mother is subject to a risk of harm from father, who no longer has a relationship with mother or with L. Accordingly, there is no current threat of harm to L based on exposure to domestic violence. We reverse the judgment of jurisdiction.

Reversed.