No. 201			March 12, 2025			581

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of E. E.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. G.,
*Appellant.*

Crook County Circuit Court
24JU00873; A184439

Wade L. Whiting, Judge.

Argued and submitted December 6, 2024.

Gabe Newland, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Hellman, Judge, and Mooney, Senior Judge.

ORTEGA, P. J.

Reversed and remanded for entry of a jurisdictional judgment establishing dependency jurisdiction based on allegations other than A and J; otherwise affirmed.

**ORTEGA, P. J.**

Mother appeals a juvenile court's judgment asserting jurisdiction over her two-year-old daughter, E. Mother assigns error to the trial court's determination that the Department of Human Services (DHS) had proved allegations A and J in the dependency petition, which both relied on a finding that mother was abusing substances.[1] The court relied on mother's non-answers to questions about her substance use, and a recent police report that expressed "concern[] about impairment" to infer that mother was using substances in a way that posed a current threat of serious loss or injury to E. We agree with mother that the evidence that DHS presented was insufficient to support juvenile court jurisdiction over E based on allegations A and J, because the evidence was insufficient to support a finding that mother was using substances and that that use created a current risk of serious harm to E. Accordingly, we reverse and remand for entry of a judgment establishing dependency jurisdiction on allegations other than A and J; otherwise, we affirm. *See, e.g.*, *Dept. of Human Services v. S. P. R.*, 283 Or App 417, 421, 388 P3d 1246, *rev den*, 361 Or 311 (2017).

On appeal, we review a jurisdictional judgment to "determine whether, on the record before it, the juvenile court erred in making the statutorily prescribed determination." *Dept. of Human Services v. J. H.*, 292 Or App 733, 734, 425 P3d 791 (2018). In doing so, we view the evidence in the light most favorable to the juvenile court's disposition, accepting permissible derivative inferences, and assess the sufficiency of that evidence to permit the outcome. *Id.*

Because mother challenges on appeal only the two jurisdictional bases associated with her alleged substance use, we discuss the following facts relevant to addressing that challenge only. In February 2024, DHS removed E from the care of both mother and father due to a December 2023 report that E was exposed to domestic violence. On February 26, due to additional reports gathered prior to removal that E

_____

[1] Mother does not challenge the court's determination that DHS had proved petition allegations B and H, relating to mother, and D, E, and I, relating to father, nor does she challenge that the court could take jurisdiction over E based on those allegations.

had been exposed to marijuana, DHS ordered a hair follicle test of E, which tested positive for methamphetamine and marijuana, and their corresponding respective metabolites, amphetamine and Carboxy-Delta-9. Due to the presence of the metabolites, an expert testified that E must have been exposed by ingestion within the 90 days preceding the test.[2] With respect to substance use, DHS alleged in the petition that "A. The mother's substance abuse impairs her ability to safely parent the child, placing the child at risk of harm[,]" and eventually amended its petition to add that "J. The child tested positive for controlled substances (amphetamine and methamphetamine) and mother's ongoing/untreated substance abuse interferes with her ability to safely parent the child."

Both mother and father were asked about their substance use at the jurisdictional hearing on April 4. Mother responded "I don't know" when asked whether she used methamphetamine. She was then asked how often she used methamphetamine, to which she responded, "I don't know how to answer that question." In turn, father first denied using methamphetamine, but later admitted that he used the drug prior to E being removed from the home, stating that he hadn't used methamphetamine since DHS opened the case in December 2023. Regarding any marijuana use, father offered the same evasive answers that mother did. A case worker also testified that she read a police report from a traffic stop the previous month, where officers were "concern[ed] about impairment" of mother, but no evidence was presented that mother was tested for impairment or arrested. A different case worker also testified that, prior to E's removal, family members or neighbors reported concerns that E was being exposed to marijuana. However, DHS did not present evidence that anyone had witnessed mother using or appearing to be under the influence before or after E's removal from her care.

The juvenile court made the following oral ruling:

---

[2] The expert explained that because of E's age, ingestion is most likely to occur through a caregiver ingesting the drug and transferring it to the child through close contact and sweat.

"[B]oth parents refused to answer questions about their respective use for methamphetamine and marijuana. So having previously found the exposure happened while in the care and custody of the parents, considering the expert testimony that it's likely ongoing exposure—and, again, the parents' non-denial of use, I'm finding by a preponderance of the evidence that *** there is substance abuse *** that impairs the ability to safely parent, and the parents are in need of services to ameliorate the danger to the child."

As noted, mother appeals the trial court's ruling as to jurisdictional bases A and J relating to substance use.

A court may assert jurisdiction over a child "[w]hose condition or circumstances are such as to endanger the welfare of the [child]." ORS 419B.100(1)(c). DHS bears the burden of presenting sufficient evidence to "support a conclusion that the child's condition or circumstances expose the child to a current threat of serious loss or injury that is likely to be realized." *J. H.*, 292 Or App at 737-38 (internal quotation marks omitted). DHS must also establish that "the threat is current and nonspeculative," *Dept. of Human Services v. A. L.*, 268 Or App 391, 397, 342 P3d 174 (2015), and that there exists "a nexus between the allegedly risk-causing conduct and the harm to the child." *J. H.*, 292 Or App at 738 (quoting *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 62, 308 P3d 307 (2013).

In this case, while DHS proved that E suffered harm due to exposure to methamphetamine and marijuana, it failed to provide sufficient evidence from which the juvenile court could permissibly infer that mother's substance use created the condition or circumstance giving rise to that harm, or that it persisted at the time of the hearing. The record contained no affirmative evidence of mother's substance use, and though we agree that some evidence may allow a judge to infer a parent's substance use, no such evidence existed on this record. Here, the judge relied on the evasive testimony of both mother and father to find that mother engaged in substance use that impaired her ability to safely parent E. However, their evasive non-answers did not provide affirmative evidence of that. *See Dept. of Human Services v. M. Q.*, 253 Or App 776, 786, 292 P3d 616 (2012) (finding a witness's testimony to be not credible does not

provide affirmative evidence of the opposite (relying on *State v. Reed*, 339 Or 239, 245, 118 P3d 791 (2005))). The court was permitted to find that mother was not a credible witness but could not use her evasive response as affirmative evidence of substance use.

The court also relied on finding that E must have been exposed to the substances while in the parents' care to infer that mother was abusing substances. However, without other evidence of mother's substance use, this inference is too speculative given father's admission to using methamphetamine before E's removal.

On appeal, DHS argues that mother's evasive testimony was corroborated by collateral reports from family members and neighbors and a police report from the previous month. We are not persuaded that those collateral reports supported a nonspeculative inference of mother's substance use. In other cases where we have allowed the trial court to infer substance use from collateral reports, the parent had an established history of substance use, including criminal convictions related to intoxication. *See, e.g.*, *Dept. of Human Services v. K. V.*, 276 Or App 782, 786, 369 P3d 1231, *rev den*, 359 Or 667 (2016) (father was convicted of domestic violence related to alcohol use and was court ordered to complete a substance abuse assessment, which, according to the record, was never completed). Here, the case worker did not offer any testimony about substance use specific to mother, nor did DHS offer any other evidence that would suggest mother had an issue with substance use. Thus, the juvenile court's inference that mother was abusing substances, especially when father admitted to using methamphetamine, required impermissible speculation on this record.

Because DHS failed to present sufficient evidence of mother's substance use, we reverse and remand for the juvenile court to enter a jurisdictional judgment that does not rely on allegations A and J.

Reversed and remanded for entry of a jurisdictional judgment establishing dependency jurisdiction based on allegations other than A and J; otherwise affirmed.